**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JARED AUGUSTINE | * | |
| | * | CIVIL ACTION NO.: 1:26-cv-04609 |
| *Plaintiff* | * | |
| | * | |
| VERSUS | * | JUDGE/SECTION: |
| | * | |
| TRILLER HOLD CO., LLC, | * | |
| and THUZIO, LLC | * | |
| *Defendants* | * | |

**************************************************************************

## COMPLAINT FOR DAMAGES

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Jared Augustine ("Plaintiff" or "Mr. Augustine"), complaining of Defendants Triller Hold Co., LLC, and Thuzio, LLC ("Defendants") and for his cause of action, would respectfully show unto this Honorable Court the following:

### I.    NATURE OF THE ACTION

1. Mr. Augustine brings this action to recover nearly two years' of unpaid salary for work he performed for Defendant Thuzio LLC, and by extension, its parent company, Defendant Triller Hold Co., LLC.

2. Mr. Augustine was hired as Chief Executive Officer of Thuzio LLC in October 2021, and worked in that role until August 2024.

3. Defendant Thuzio agreed to pay Mr. Augustine a salary of $300,000 per year for his role as CEO, but only paid a portion of his salary in 2023 and 2024, leaving hundreds of thousands of dollars in salary unpaid. The Defendants also failed to reimburse Mr. Augustine for over $120,000 in business expenses he incurred on his personal credit card, on behalf of Thuzio.

4. Mr. Augustine brings this action to remedy the Defendants' failure to pay his salary and

failure to provide wage statements, in violation of New York Labor Law ("NYLL") § 190 *et seq*.

5.  In addition or in the alternative to the NYLL claims, Mr. Augustine also brings claims for breach of contract, conversion, unjust enrichment, and quantum meruit for his uncompensated labor and un-reimbursed business expenses.

6.  Mr. Augustine seeks declaratory relief, unpaid wages for work performed, liquidated damages, statutory damages, as well as reasonable attorney's fees, costs of this action, pre- and post-judgment interest, and other appropriate relief pursuant to the NYLL and other laws of the state of New York.

## II.    JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

8.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred within this District, the contract in question was entered into within this District, and Defendants operate their business in this District.

## III.    PARTIES

9.  Plaintiff Jared Augustine is, and at all times relevant herein was, a citizen of New Jersey of the full age of majority and a resident of and domiciled in Monmouth County in the State of New Jersey.

10. Upon information and belief, Defendant Triller Hold Co., LLC ("Triller"), is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Los Angeles, California.

11. Upon information and belief, Defendant Thuzio LLC ("Thuzio") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in New York, New York.

## IV.    PROCEDURAL BACKGROUND

12. Mr. Augustine initially brought this matter to arbitration before JAMS's New York office, pursuant to a mandatory arbitration clause in the Thuzio Employment Agreement (defined and described further below).

13. The JAMS demand for arbitration was filed on October 1, 2024.

14. The JAMS Notice of Commencement of Arbitration was sent to Mr. Augustine and to Triller on January 8, 2025.

15. A preliminary conference was held with arbitrator Stephen Sonnenberg on March 21, 2025. Triller appeared via counsel, Jackson Lewis P.C.

16. The parties proceeded with informal discovery for several months, until approximately October 2025, when counsel for Triller Hold Co. LLC informed the undersigned counsel that he had been unable to reach his client, and had not received any responses from Triller regarding any aspect of the arbitration.

17. Arbitrator Sonnenberg nonetheless set the matter for a hearing on March 17, 2026.

18. On January 9, 2026, Triller's counsel, Jackson Lewis P.C., withdrew from representation in connection with the JAMS arbitration proceeding. Before withdrawing, the attorney provided names and email addresses of two individuals at Triller who were known to still be involved with the company: Mark Carbeck and Desmond Pei Huang Shu.

19.  Arbitrator Sonnenberg held two (2) pre-hearing conferences, on January 13 and January 23, 2026. Prior to each hearing, JAMS provided multiple notices of the hearing date and time to Mr. Carbeck and Mr. Shu via email.

20. Neither Mr. Carbeck nor Mr. Shu attended either pre-hearing conference.

21. Neither Mr. Carbeck nor Mr. Shu corresponded via email with undersigned counsel, or, upon information and belief, with any JAMS staff, at any point after the withdrawal of Triller's counsel.

22. Due to Triller's utter failure to cooperate or participate in the JAMS arbitration proceeding, Mr. Augustine elected to preserve and pursue his rights in a court of law, which led to the instant filing.

23. It is Mr. Augustine's position that Defendants violated the mandatory arbitration clause of the Thuzio Employment Agreement by failing to participate meaningfully in the JAMS Arbitration.

## V.      FACTUAL BACKGROUND

*Relationships Among Parties and Entities*

24. Plaintiff Jared Augustine is the co-founder of several companies; relevant here are Julius Works Inc. ("Julius"; founded in 2012) and Thuzio Inc. (also founded in 2012).

25. On or about October 30, 2021 Triller Hold Co. LLC ("Triller") acquired Thuzio, Inc., by way of a Unit Exchange Agreement (the "Thuzio Acquisition").[1]

26. As part of the Thuzio Acquisition, Triller converted Thuzio, Inc. from a Delaware corporation to a Delaware limited liability company, and named it Thuzio LLC (Thuzio LLC will be referred to hereinafter as "Thuzio").

27. At the time of the Thuzio Acquisition, Mr. Augustine had been serving as the Chief Executive Officer of both Thuzio, Inc., and Julius.

*Thuzio Employment Agreement*

---

[1] Triller Hold Co. LLC / Thuzio Inc. Unit Exchange Agreement, attached hereto as Exhibit "A."

28. As part of the Thuzio Acquisition, Thuzio re-hired Mr. Augustine as its Chief Executive Officer, executing an Employment Agreement with Mr. Augustine in October 2021 to confirm the terms of his employment (the "Thuzio Employment Agreement").[2]

29. The Thuzio Employment Agreement was signed by Mr. Augustine on October 29, 2021, and by Triller's CEO at the time, Bobby Sarnevesht, on October 30, 2021.

30. The Thuzio Employment Agreement contains a "Governing Law" provision that indicates the agreement is to be governed by and construed in accordance with New York State law.

31. The Thuzio Employment Agreement provides that Thuzio was obligated to pay Mr. Augustine an annual base salary of $300,000, paid every two weeks in accordance with the customary payroll practices of Thuzio, and pro-rated for partial years of employment.

32. The Thuzio Employment Agreement also provides extensive termination provisions (section 5), with procedures for termination with and without cause, by Thuzio or by Mr. Augustine.

33. In relevant part, the "Termination Without Cause" provisions (Section 5(d)) of the Thuzio Employment Agreement provide that Thuzio could terminate Mr. Augustine's employment under the agreement without cause by providing Mr. Augustine with a Notice of Termination at least thirty (30) days prior to such termination.

34. Section 7 of the Thuzio Employment states that Thuzio shall provide Mr. Augustine with certain payments and benefits. When the termination is made by Thuzio without cause, Thuzio was required to: (1) pay the "Accrued Obligations" (detailed further below), and (2) provided that Mr. Augustine signed a general release in favor of Thuzio, Thuzio was obligated to continue paying Mr. Augustine's base salary for a minimum of three months,

---

[2] Thuzio LLC Employment Agreement, attached hereto as Exhibit "B".

if not longer ("Severance Pay").

35. The "Accrued Obligations" (found in Section 7(a) of the Thuzio Employment Agreement) include: (1) payment of accrued but unpaid base salary earned through the date of termination, (2) reimbursement of appropriate business expenses incurred through, but not reimbursed prior to the date of termination, and (3) any vested accrued benefits under Thuzio's employee benefits plans and programs applicable to Mr. Augustine as of the date of termination.

36. In recognition of Mr. Augustine's continuing employment with Julius at the time of the Thuzio Acquisition, the Thuzio Employment Agreement includes a section titled "Excluded Businesses" that permitted Mr. Augustine to continue his employment with Julius for a 6-month period following the effective date of the Thuzio Employment Agreement.

37. The "Excluded Businesses" section of the Thuzio Employment Agreement further provides that the board of Thuzio "shall determine in good faith" whether Julius was competitive with Thuzio, and if determined that it was not competitive, then Mr. Augustine would be permitted to continue in his role as Chief Executive Officer of Julius alongside his role as Chief Executive Officer of Thuzio.

38. The Thuzio Employment Agreement contains an extensive dispute resolution section, which stipulates that any disputes under the agreement are to be brought before JAMS in Manhattan, New York. Actions to challenge or enforce an arbitrator's award are to be brought in a state or federal court sitting in Manhattan, New York.

*Triller Acquisition of Julius Works, Inc.*

39. Not long after the Thuzio Acquisition, Triller became interested in acquiring Julius. Accordingly, on March 25, 2022, Darren Traub on behalf of Triller Hold Co. LLC and Mr. Augustine on behalf of Julius Works, Inc. executed a "Binding Term Sheet" outlining the terms of the transaction for Triller's acquisition of Julius (the "Julius Acquisition").[3]

40. As part of Triller's acquisition of Julius Works, Inc., Triller converted the company from a Delaware corporation to a Delaware limited liability company, renaming the company "JuliusWorks LLC."

41. The Julius Acquisition was fully consummated with a Unit Exchange Agreement, executed on November 11, 2022 by Mahi de Silva, CEO of Triller Hold Co. LLC, and Mr. Augustine on behalf of Julius.[4]

42. Upon information and belief, the board of Thuzio never performed an assessment between October 30, 2021 and November 11, 2022 to determine whether Julius was "competitive" with Thuzio.

43. It is Mr. Augustine's position that Triller's acquisition of Julius rendered moot the provisions of the Thuzio Employment Agreement that address Mr. Augustine's involvement with Julius, because once Thuzio and Julius came under the same ownership, the competition (or lack thereof) between the two companies no longer had the same meaning as it did prior to the Julius Acquisition.

*Thuzio's Failures to Make Payroll, and Termination of Mr. Augustine's Employment*

---

[3] Triller Hold Co. LLC – Julius Binding Term Sheet, attached hereto as Exhibit "C."
[4] Triller Hold Co. LLC – Julis Unit Exchange Agreement, attached hereto as Exhibit "D."

44. Pursuant to Mr. Augustine's employment with Triller, he was to be paid salary in the form of a paycheck with the gross amount $12,500, every two weeks.

45. In 2023, Triller's ability to pay Mr. Augustine's salary consistently began to falter.[5]

46. On April 17, 2023, instead of issuing a paycheck of $12,500.00 to Mr. Augustine, Triller sent Mr. Augustine a payment of $1,482.00. Triller made up that payment with a supplemental paycheck of $11,018.00 on May 12, 2023.

47. Triller continued to stumble, splitting Mr. Augustine's paychecks into $1,482.00 and $11,018.00 respectively on May 31 and June 2, 2023, and again on June 16 and June 30, 2023.

48. Triller then skipped several of Mr. Augustine's paychecks after June 30, 2023: the next paycheck was not provided to Mr. Augustine until September 7, 2023.

49. Triller skipped several paychecks again, with the next paycheck not arriving until November 13, 2023.

50. Triller skipped several paychecks again, with the next paycheck not arriving until January 23, 2024.

51. Triller skipped several paychecks again, with the next paycheck not arriving until April 30, 2024.

52. In total, between June 30, 2023 and April 30, 2024, Triller missed no less than sixteen (16) paychecks of $12,500.00 each.

53. On April 30, 2024, in an apparent attempt to make up for missed paychecks, Triller sent Mr. Augustine four (4) payments of $12,500.00 each.

54. On May 21, 2024, in an apparent attempt to continue making up for missed paychecks, Triller sent Mr. Augustine two (2) payments of $12,500.00 each. This effort still left 10

---

[5] Thuzio – Payment History of Jared Augustine, attached hereto as Exhibit "E."

paychecks – from the period between June 30, 2023 and April 30, 2024 – unpaid.

55. Triller did not send Mr. Augustine another paycheck after May 21, 2024, despite Mr. Augustine's ongoing employment as CEO of Thuzio.

56. On July 16, 2024, Triller sent Mr. Augustine a Notice of Termination, signed by Miro Lestanin, designated as "Senior HR Director" for Thuzio and/or Triller. This termination was to be effective August 16, 2024.[6]

57. As part of Mr. Augustine's termination from Thuzio, neither Triller nor Thuzio ever sent a release to Mr. Augustine.

58. In total, Thuzio paid Mr. Augustine a salary in 2023 or only $175,000, out of the agreed-upon $300,000; in 2024, Thuzio paid Mr. Augustine only $100,000 out of the agreed-upon $187,500 (pro-rated for a partial year's salary).

59. Across 2023 and 2024, Thuzio underpaid Mr. Augustine by $212,500.00.

60. Despite Defendants' repeated failures to pay Mr. Augustine in 2023 and 2024, Triller and Thuzio were well-capitalized during that time period, and spent substantial funds on other things, including but not limited to marketing expenses, payments to celebrities, and fees for event rentals.

61. Upon information and belief, Defendants and the executives and shareholders who exert a controlling influence on each Defendant company were aware of their legal obligation to pay Mr. Augustine's salary, but made a conscious decision not to pay his salary, and to pay for other expenses instead.

*Un-reimbursed Expenses Incurred by Mr. Augustine on Thuzio's Behalf*

62. Section 4(d) of the Thuzio Employment Agreement expressly provides that Mr. Augustine "shall be entitled to receive reimbursement for all reasonable business

---

[6] Thuzio Notice of Termination, attached hereto as Exhibit "F."

expenses incurred by Executive [Mr. Augustine] in the performance of Executive's duties hereunder."

63. During Mr. Augustine's employment with Thuzio, he incurred substantial costs on his credit card on behalf of Thuzio between January 6, 2023 and July 14, 2024, totaling $120,272.44.[7]

64. All of the expenses reflected in Exhibit G were legitimate business expenses for Thuzio – and some expenses were beyond "ordinary" business expenses that a CEO would normally be expected to incur on behalf of his company.

65. As some examples: Mr. Augustine paid for flights for celebrity guests to attend Thuzio's events, and for rental fees for venues that Thuzio used for its events. These are ordinarily expenses that the company's marketing department would pay for; however, Defendants Thuzio and Triller frequently put Mr. Augustine in a position where he was required to make these kinds of large purchases.

66. Neither Thuzio nor Triller ever reimbursed Mr. Augustine for these business expenses during his employment, or in the time period following his employment, with Thuzio.

## VI.   COUNT I: CLAIM FOR UNPAID WAGES UNDER NEW YORK LABOR LAW

67. Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

68. At all times relevant to this action, with the exceptions noted above, Mr. Augustine was employed by the Defendants within the meaning of New York Labor Law §§ 2(5) and 190(2).

69. At all times relevant to this action, the Defendants were employers within the meaning of

---

[7] Augustine Payment History – Thuzio Expenses, attached hereto as Exhibit "G."

NYLL §§ 2(6) and 190(3).

70. The Defendants failed to compensate Mr. Augustine with his applicable salary on numerous occasions through 2023 and 2024, in violation of NYLL § 191(1)(d).

71. The Defendants' violations of the NYLL, as described in this complaint, were willful.

72. Due to these violations, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, his unpaid salary and an amount equal to 100 percent of his unpaid salary in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

## VII.  COUNT II: CLAIM FOR FAILURE TO PROVIDE PAY STATEMENTS UNDER NEW YORK LABOR LAW

73. Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

74. New York Labor Law requires employers to provide employees with a statement provided along with every payment of wages, listing, *inter alia*: the dates of work covered by that payment of wages; rate of pay; gross wages; deductions; allowances, if any; and net wages. NYLL § 195(3).

75. For each paycheck that Defendants failed to provide to Mr. Augustine, the Defendants also failed to provide Mr. Augustine with the required written statement of his wages for the respective pay period.

76. The Defendants' violations of NYLL, as described in this complaint, were willful.

77. Accordingly, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, damages of $250 for each work day that the violations occurred, up to $5,000, pursuant to NYLL § 198(1-d), together with reasonable attorney's fees, costs of the action and pre-judgment interest, all in an amount to be determined at trial.

## VIII.    COUNT III: BREACH OF CONTRACT

78. Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

79. At all times relevant to this litigation, Defendant Thuzio was in a contractual relationship with Mr. Augustine, and owed a duty to Mr. Augustine to act in good faith and deal fairly with him.

80. At all times relevant to this litigation, Defendant Triller was in a contractual relationship, by way of its ownership and control of Defendant Thuzio, with Mr. Augustine and owed a duty to Mr. Augustine to act in good faith and deal fairly with him.

81. This contract was evidenced by a writing: the above-described Thuzio Employment Agreement, which was signed by Mr. Augustine and by Defendant Triller Hold Co LLC as the managing member of Defendant Thuzio, by way of Triller's CEO at the time, Bobby Sarnevesht.

82. Thus, there is no question that a contract was formed between Defendants Thuzio and Triller, on the one hand, and Mr. Augustine, on the other.

83. Mr. Augustine performed all of the duties of his role as CEO under the Thuzio Employment Agreement; at no time was Mr. Augustine ever in breach of this agreement.

84. Defendants Triller and Thuzio breached the contract and the implied duties contained therein on multiple occasions, by failing to pay Mr. Augustine's salary, and failing to reimburse Mr. Augustine for expenses he incurred on behalf of the Defendants.

85. As a result of the breaches by Defendants Triller and Thuzio, Mr. Augustine suffered damage: over $212,500 in unpaid salary – representing more than 8 months of uncompensated labor – and over $120,000 in un-reimbursed business expenses, which Mr. Augustine incurred on his personal credit card.

86. Accordingly, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, direct damages no less than the unpaid sums owed under the Thuzio Employment Agreement, together with reasonable attorney's fees, costs of the action and pre-judgment interest, all in an amount to be determined at trial.

## IX.    COUNT IV: CONVERSION

87. Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

88. At all times relevant to this action, Mr. Augustine has a possessory right in the funds that he expended on Defendant Thuzio's behalf as business expenses for the company, because Thuzio agreed in its Thuzio Employment Agreement that it would reimburse Mr. Augustine for business expenses he incurred on Thuzio's behalf.

89. At all times relevant to this action, Defendants Thuzio and Triller have been aware of the precise amount of expenses Mr. Augustine incurred on behalf of Thuzio, and have been aware of their responsibility to reimburse Mr. Augustine.

90. The money spent by Mr. Augustine, and owed as reimbursement to Mr. Augustine, is currently in Defendants' possession, in the form of liquid capital that could be delivered to Mr. Augustine at any time.

91. Defendants Thuzio and Triller therefore presently exercise complete dominion over Mr. Augustine's property (i.e. the unreimbursed capital), and are interfering with Mr. Augustine's access to it, in derogation of Mr. Augustine's rights.

92. Neither Defendant Thuzio nor Defendant Triller has offered any legal justification for their refusal to reimburse Mr. Augustine.

93. Accordingly, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, damages reflecting the reasonable market value of the un-reimbursed money,

no less than the actual amount incurred by Mr. Augustine, in a precise amount to be determined at trial.

## X.    COUNT V: UNJUST ENRICHMENT

94. Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

95. In the event this Court finds that there was not a valid contract between Mr. Augustine and the Defendants, or that the contract is unenforceable for any reason, Mr. Augustine pleads, in the alternative, unjust enrichment.

96. At all times relevant to this action, Mr. Augustine was employed by the Defendants, and consistently maintained an expectation that he would be compensated for his work, and that business expenses incurred on behalf of the Defendants would be reimbursed.

97. During the period from January 1, 2023 to August 16, 2024, Defendants Triller and Thuzio unjustly enriched themselves by wrongfully withholding payment of salary to Mr. Augustine, and further by wrongfully refusing to reimburse Mr. Augustine for expenses he incurred on behalf of the businesses.

98. Defendants benefited directly from this withholding of funds, by retaining hundreds of thousands of dollars in liquid capital that Defendants could, and did, use for other expenditures.

99. This benefit to Defendants came at great expense to Mr. Augustine, who was forced to work for several months at a time without compensation, is currently suffering from the effects of missing several hundred thousand dollars' compensation, and continues to substantial carry credit card on Defendants' behalf.

100.    Equity and good conscience require restitution from Defendants to Mr. Augustine, in the amounts described in this complaint for Mr. Augustine's unpaid salary and un-

reimbursed expenses.

101.    Accordingly, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, direct damages no less than the unpaid salary and un-reimbursed expenses, together with reasonable attorney's fees, costs of the action and pre-judgment interest, all in an amount to be determined at trial.

## XI.    COUNT VI: QUANTUM MERUIT

102.    Mr. Augustine re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

103.    In the event this Court finds that there was not a valid contract between Mr. Augustine and the Defendants, or that the contract is unenforceable for any reason, Mr. Augustine pleads, in the alternative, *quantum meruit*.

104.    At all times relevant to this action, Mr. Augustine performed extensive services for Defendants in his capacity as Chief Executive Officer; Mr. Augustine discharged his duty in good faith at all times while employed by Defendant Thuzio.

105.    At all times relevant to this action, Defendants Triller and Thuzio were well aware of Mr. Augustine's role at Thuzio, and happily accepted Mr. Augustine's services as CEO of the company, as evidenced by the fact that Mr. Augustine continued in that role for nearly three years.

106.    At all times relevant to this action, Mr. Augustine consistently maintained an expectation that he would be compensated for the services he provided to Defendants Thuzio and Triller, and that business expenses incurred on behalf of the Defendants would be reimbursed.

107.    The reasonable value of the services Mr. Augustine provided to Defendants can be measured either by the agreed-upon compensation figure outlined in the Thuzio

Employment Agreement – $300,000 per year – or by an assessment of the salaries of similarly situated CEOs, which is readily available and can be produced during the discovery phase of this action.

108.     Accordingly, Mr. Augustine is entitled to recover from the Defendants, jointly and severally, direct damages no less than the unpaid salary and un-reimbursed expenses, together with reasonable attorney's fees, costs of the action and pre-judgment interest, all in an amount to be determined at trial.

## XII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Jared Augustine, prays that Defendants be duly cited to appear and answer this Complaint, and that after due proceedings be had, there be judgment rendered in his favor and against Defendants, for all damages that he is entitled to recover, together with judicial interest from the date of demand, and for all costs of these proceedings, including any and all expert fees and for all other general and equitable relief.

Dated: June 1, 2026

Respectfully Submitted:
**EGENBERG, APLC**

*/s/ Maximilian T. Hass*
MAXIMILIAN T. HASS, ESQ. (#5709787)
650 Poydras Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:    (504) 229-5700
Facsimile:     (504) 617-7911
Email:          max@egenberg.com

**GABBARD & KAMEL, PLLC**
JASON D. GABBARD, ESQ. (#403728)
420 Lexington Ave, Suite 2360
New York, New York 10170
Telephone:    (646) 271-2985
Email:          jgabbard@the-forefront.com

*Attorneys for Plaintiff Jared Augustine*